IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC., *et al.*, | Civil Action No. 4:18-cv-00554 |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| CITY OF MYRTLE BEACH, *et al.*, | |
| Defendants. | |

This matter comes before the Court upon the Plaintiffs National Association for the Advancement of Colored People Inc., Simuel Jones, Leslie Stevenson, and Cedric Stevenson's ("Plaintiffs") Motion for Preliminary Injunction. (ECF 6.) The Plaintiffs seek a preliminary injunction requiring the Defendants City of Myrtle Beach and City of Myrtle Beach Police Department ("Defendants") to maintain a substantially similar traffic pattern during both Myrtle Beach Bike Week Spring Rally and the Atlantic Beach Bikefest.[1] (ECF 1.) For the reasons set forth below, the Plaintiffs' Motion for Preliminary Injunction is denied.

## FACTUAL BACKGROUND

For the last several decades, two large motorcycle rallies have been held in the Myrtle Beach area during the month of May. The first is the Myrtle Beach Bike Week Spring Rally ("Harley Week"), which is held during the middle of May. The second is the Atlantic Beach

---

[1] This motion is made in the context of the case in which the Plaintiffs assert civil rights actions under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d alleging deprivations of their rights to free speech and association under the First Amendment and their rights to equal protection of the laws under the Fourteenth Amendment to United States Constitution.

1

Bikefest ("Bikefest") which is held over Memorial Day Weekend each year.[2] The Plaintiffs contend, and the Defendants do not dispute, that the majority of Harley Week participants are white, while the majority of Bikefest participants are African-American. This preliminary injunction involves the traffic management plan instituted by the Defendants in conjunction with other state and local agencies during Bikefest.

Currently, the Defendants do not implement a unique traffic plan for the Harley Week biker event. Conversely, the Defendants do implement a traffic plan over Bikefest which involves reducing a portion of Ocean Boulevard[3] to one lane, one-way traffic from Friday to Monday of Memorial Day Weekend. In addition, the Bikefest plan calls for a 23.1-mile traffic loop around Horry County that is generally in place on the Friday, Saturday and Sunday of Memorial Day Weekend from 10:00pm to 2:00am. The current traffic plan for Bikefest is substantially similar to a plan that took effect over Memorial Day Weekend 2015 and has been in place ever since that time.

A short history of the traffic plans instituted during Bikefest will be helpful in understanding the historical backdrop of this case. From 1999 to 2010, traffic flowed one-way southbound on Ocean Boulevard during Memorial Day Weekend, and there was no traffic loop in place for the event.[4] In 2011, the City began to allow traffic to flow in both directions on Memorial

---

[2] The parties have used multiple different names for the two biker events held in May. The Court will refer to Myrtle Beach Bike Week Spring Rally as "Harley Week" and the Atlantic Beach Bikefest as "Bikefest."

[3] Ocean Boulevard is a major thoroughfare in Myrtle Beach that runs parallel to the beach. There are numerous hotels, restaurants, and other attractions located along Ocean Boulevard.

[4] It should be noted that a similar lawsuit was filed in 2003 seeking a preliminary injunction related to the traffic plan for Memorial Day Weekend. *Nat'l Ass'n for Advancement of Colored People v. City of Myrtle Beach*, No. 4:03-1732-25TLW (D.S.C. May 9, 2005). In that case, the Plaintiffs challenged the imposition of a one-way traffic pattern on Ocean Boulevard during Bikefest where there was no similar one-way traffic plan in place for Harley Week. The District Court issued a preliminary injunction in favor of the Plaintiffs in May 2005. The Fourth Circuit Court of Appeals subsequently stayed the injunction. Thereafter, the parties entered into a Settlement Agreement in which the Defendants agreed to use the same traffic restrictions, pattern or plan on Ocean Boulevard from 29th Avenue North to 17th Avenue South, during the times of 2:00pm through midnight during both Harley Week and Bikefest. After midnight and until 2:00pm, the Settlement Agreement gave the Defendants authority to act in their discretion in

Day Weekend. In 2013, members of the Myrtle Beach Police Department, along with other law enforcement agencies, requested that that the City reestablish a one-way traffic pattern for Memorial Day Weekend due to concerns about increased public safety and traffic issues during Memorial Day Weekend. The City denied the request. (ECF 24-2.)

During Memorial Day Weekend 2014, there were nine shooting incidents, including three homicides, in the vicinity of Ocean Boulevard during Memorial Day Weekend. *Id*. These events were the catalyst that led to the formation of the Bikefest Task Force ("Task Force") to address the perceived public safety problems arising during Memorial Day Weekend. *Id.* The Task Force consisted of representatives from various agencies affiliated with Horry County, the State of South Carolina, and municipalities throughout the Myrtle Beach area.[5] *Id.* The Task Force eventually decided to implement the current traffic plan in effect on Memorial Day Weekend. *Id.* The Task Force developed this plan based on a consensus among Task Force members that local governments needed to keep pedestrians and vehicular traffic moving at all times during peak times of traffic during Memorial Day Weekend. *Id.* The current traffic plan for Memorial Day Weekend has been in place for Bikefest 2015, Bikefest 2016 and Bikefest 2017.

The Plaintiffs filed their complaint on February 27, 2018, seeking, among other things, a permanent injunction to enjoin the traffic plan in place for Memorial Day Weekend. (ECF 1.) The Plaintiffs filed their Motion for a Preliminary Injunction on the same day. (ECF 6.) The Defendants filed a response to the Plaintiffs' Motion on March 28, 2018 (ECF 24), and the Plaintiffs filed their reply on April 10, 2018. (ECF 29.) This case was reassigned to the Honorable

---

determining whether to remove the traffic restrictions or leave them in place. The Settlement Agreement expired on July 31, 2010. (ECF 6-20.)

[5] Members of the Bikefest Task Force include the following: Town of Atlantic Beach, Town of Aynor, Town of Briarcliff Acres, City of Conway, Horry County Government, City of Myrtle Beach, City of North Myrtle Beach, Town of Surfside Beach, South Carolina Law Enforcement Division, South Carolina Department of Public Safety, South Carolina Emergency Management Division, Coastal Carolina University, Myrtle Beach Hospitality Association, and Myrtle Beach Chamber of Commerce, among others.

A. Marvin Quattlebaum, Jr. on April 12, 2018. (ECF 30.) Thereafter, on April 20, 2018, the Court scheduled a hearing on the Plaintiffs' motion for June 6, 2018. Upon request of the Plaintiffs, the Court adjusted its hearing schedule and held a hearing on this matter on May 8, 2018. At the hearing, the Plaintiffs stated that their request for a preliminary injunction sought only to enjoin the one lane, one-way traffic restriction on Ocean Boulevard and the elimination of the 23.1-mile loop from the Bikefest traffic plan. R. at 14.

## **STANDARD FOR PRELIMINARY INJUNCTION**

A court may issue a preliminary injunction upon notice to the adverse party. Fed. R. Civ. P. 65(a). It is well settled law that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). A movant seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Id.* at 20. *See also Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). Critically, each of the four elements must be satisfied. *Winter*, 555 U.S. at 20. Moreover, a plaintiff must make a "clear showing" both that he is likely to succeed on the merits at trial and that he is likely to suffer irreparable harm absent relief. *Id.*; *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

The Defendants raise an issue as to whether the injunction sought by the Plaintiffs constitutes a mandatory preliminary injunction or a prohibitory preliminary injunction. When a preliminary injunction is mandatory rather than prohibitory in nature, a court's application of the preliminary injunction standard set forth in *Winter* is "even more searching." *Pashby*, 709 F.3d at 319. "[A] preliminary injunction's tendency to preserve the status quo determines whether it is prohibitory or mandatory." *Id.* at 320. A prohibitory preliminary injunction aims to maintain the

status quo and prevent irreparable harm while a lawsuit is pending, while a mandatory preliminary injunction does not preserve the status quo. *Id.* at 319-20. The Fourth Circuit has defined the status quo as the "last uncontested status between the parties which preceded the controversy." *Id.* at 320 (internal citations omitted). The Court need not reach this issue because, even applying the *Winter* test for prohibitory injunctions, the Plaintiffs have failed to make the showing required for the Court to grant preliminary injunctive relief.

## ANALYSIS

The Court has evaluated the record carefully, as well as the briefs, testimony, and other submissions by the parties. The Court notes that some of the exhibits and testimony offered by the parties may fall short of the standards required under the Federal Rules of Evidence. For purposes of the preliminary injunction hearing, however, the Court did not exclude the evidence submitted by either side. *See Univ. of Tex v. Camensich*, 451 U.S. 390, 395 (1981) (stating that a preliminary injunction is customarily considered on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits); *See also G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725-26 (4th Cir. 2016), *vacated and remanded on other grounds,* 137 S. Ct. 1239 (2017) ("[D]istrict courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted.").

### I. LIKELIHOOD OF SUCCESS ON THE MERITS

As set forth above, the Plaintiffs must first make a clear showing that they are likely to succeed on the merits of the case. *Winter*, 555 U.S. at 20. In their motion, the Plaintiffs allege that the Bikefest traffic plan violates their rights under the United States Constitution. Specifically, the Plaintiffs claim that the traffic plan violates their rights to equal protection under the Fourteenth Amendment and their rights to expressive association under the First Amendment. The Court will

address the Plaintiffs' likelihood of success on the merits for the equal protection and expressive association claims in turn.

## A. EQUAL PROTECTION CLAIM

The Plaintiffs claim that the traffic plan instituted during Memorial Day Weekend violates the rights of Bikefest participants under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause limits all state action and prohibits a state from denying a person equal protection through enactment, administration, or enforcement of its laws and regulations. *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). However, the Equal Protection Clause does not remove all power of classification from the States. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Rather, it "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike[.]" *Id.* (quoting *Nordinger v. Hahn*, 505 U.S. 1, 10 (1992)) (internal citations omitted). Therefore, to succeed on an equal protection claim, a plaintiff must demonstrate (1) that he has been treated differently from others who are similarly situated and (2) that the unequal treatment resulted from intentional or purposeful discrimination. *Id.* If the Plaintiff makes the requisite showing, the court then proceeds to determine whether the disparity in treatment is justified under the appropriate level of scrutiny. *Id.*

Here, the Plaintiffs claim there are differences in the traffic control measures for Harley Week and Bikefest. The primary differences on which the Plaintiffs rely are the one lane, one-way traffic restrictions on Ocean Boulevard and the 23.1-mile traffic loop. It is undisputed that these traffic control measures are not included in the traffic control measure for Harley Week. Although the Defendants claim that some of the methods involved in the traffic control plan for Bikefest are

utilized at other events at the Myrtle Beach area, the Court finds there are clear differences in the plans utilized for Harley Week and Bikefest.

Having considered the differing traffic control measures, the Court turns to whether the Bikefest participants are similarly situated to Harley Week participants. The Plaintiffs contend that Bikefest participants are similarly situated to Harley Week participants because the two motorcycle rallies are similarly situated events. The Plaintiffs contend that the only difference between Bikefest and Harley Week, other than the traffic plan implemented by the Defendants, is the racial makeup of the attendees themselves.[6] To support this claim, the Plaintiffs cite to hotel occupancy data for the Myrtle Beach area (ECF 6-43), the Declaration of David B. Clarke (ECF 6-10), the Declaration of Mitchell W. Brown (ECF 6-9), the testimony of David B. Clarke[7] and the testimony of Mitchell W. Brown[8] for the proposition that both Bikefest and Harley Week draw similar amounts of visitors and create similar amounts of traffic on Ocean Boulevard. Mr. Brown, for instance, specifically stated that he did not observe any significant difference in the number of attendees or the conduct of the attendees at Harley Week 2017 and Bikefest 2017. (ECF 6-9 at 5.) In addition, Dr. Clarke opined that there is no traffic related purpose for the Bikefest traffic plan. (ECF 6-10 at 7.)

---

[6] The Plaintiffs place emphasis on the May 9, 2005 Order of the United States District Court for the District of South Carolina granting a preliminary injunction to the plaintiffs in that case. It must be noted that the 2005 Order was based on the record before the Court in the early 2000's. This Court must make its decision based on the evidence presented in this case. It is readily apparent that the record of the two cases is different. The Court would also note that the United States Court of Appeals for the Fourth Circuit stayed the 2005 order, while expressly noting that its stay was not intended to express any opinion on the merits of the issue. Last, after the date of the 2005 order, the standard for analysis of a preliminary injunction has changed. The current standard is based on the Supreme Court's *Winter* decision and the Fourth Circuit cases since *Winter*. The 2005 order was based on *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 192 (4th Cir. 1977), which applied a less rigorous standard.

[7] Dr. Clarke is the Executive Director of the University of Tennessee, Knoxville Center for Transportation Research. The Plaintiffs retained Dr. Clarke to assess the traffic, traffic plan, and traffic flows during Harley Week and Bikefest.

[8] Mr. Brown is a former police chief of Raleigh, North Carolina. The Plaintiffs retained Mr. Brown to assess the Defendants' traffic management plan and law enforcement practices during Harley Week and Bikefest.

7

The Defendants dispute this claim and assert that are considerable differences in the events. They cite to several affidavits for the proposition that traffic on Ocean Boulevard is more congested during Bikefest than Harley Week, that Bikefest attracts a younger, more socially active crowd than Harley Week, and that Bikefest participants tend to congregate and ride on Ocean Boulevard whereas Harley Week participants congregate South of the City. *See* (ECF 24-14, 24-16, 24-17, 24-18, 24-19, 24-20, and 24-21); *see also* Def. Exhibits 37 and 38. For instance, Violet Lucas, who has attended both rallies as a biker for the past five years, states that she would disagree with the assertion that both of the events are the same. (ECF 24-14.) Ms. Lucas disapproves of the traffic loop. However, she acknowledges that most of the Harley Week activities occur South of the City and that there is a "huge traffic influx" in the City during Bikefest. *Id*. She indicates that the traffic problems are also attributable to the influx of people to the city who are not associated with Bikefest.[9] *Id*. This difference is echoed by the testimony of Myrtle Beach Chief of Police Amy Prock, who testified that visitors to Myrtle Beach during Memorial Day Weekend concentrate in the Ocean Boulevard area, while visitors during Harley Week are concentrated in areas outside of the City. R. at 123-24.

Given this significant factual dispute, the Court finds that the Plaintiffs have not carried their burden in making a "clear showing" that they are likely to succeed on the merits as to this element of the equal protection claim. Specifically, the Court finds that the Plaintiffs have not made a clear showing that the participants at Harley Week and Bikefest are similarly situated due to the differences in the two events. At this early stage of this case, the Court cannot and does not determine which party will ultimately prevail on this issue. The Court simply finds that the

---

[9] Ms. Lucas submitted a subsequent affidavit. (ECF 29-19.) In that subsequent affidavit, Ms. Lucas elaborated on her criticism of the traffic loop used during Bikefest. However, she offered no additional or inconsistent testimony about the differences between Harley Week and Bikefest.

Plaintiffs have not met the applicable standard for the extraordinary remedy of preliminary injunctive relief.

Even if the Harley Week participants and Bikefest participants were similarly situated, the Court finds that the Plaintiffs have not made a clear showing that the differences in the traffic control plans resulted from intentional and purposeful discrimination. In addition to showing he or she has been treated differently from others who are similarly situated, a plaintiff asserting a claim under the Equal Protection Clause must show that the unequal treatment resulted from intentional or purposeful discrimination. *Morrison*, 239 F.3d at 654. Even when a government action disproportionately impacts members of a particular racial group, the government action will not be found to violate the Equal Protection Clause unless the plaintiff shows that the government action was motivated by discriminatory intent. *Sylvia Dev. Corp.*, 48 F.3d at 819. The Fourth Circuit has recognized several factors that are probative of whether a decisionmaking body was motivated by a discriminatory intent, including: (1) evidence of a consistent pattern of actions by the decisionmaking body; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings. *Id*.

The Plaintiffs claim this element of their equal protection claim has been met. The support presented by the Plaintiffs includes evidence showing that the traffic pattern utilized during Bikefest is not used during any other events, that there have historically been different traffic patterns used during Bikefest and Harley Week, that the plan at issue was adopted soon after the expiration of the previous litigation's settlement agreement and order, that statements by various public officials and members of the public reflect racial hostility towards Bikefest, and that the

9

traffic plan is ineffective and designed to discourage attendance. *See* (ECF 6-9, 6-10, 6-13, 6-23, 6-24, and 6-25.)

The Defendants, on the other hand, dispute this claim. The Defendants contend the traffic plan is largely a response to the events during Bikefest in 2014 when there were nine shootings and three homicides. (ECF 24-2 at 2.) They contend the Bikefest traffic plan is based on justifications of public safety and not race, and that the statements to which the Plaintiffs refer are primarily isolated, taken out of context, and pre-date the current traffic plan. The City further contends that the plan has been effective. (ECF 24-23, 24-24, 24-25, and 24-26), R. at 122.

Once again, the Court has not and cannot determine which side will ultimately prevail on this issue. However, as with the issue of substantial similarity, the Court finds that the Plaintiffs have not made a clear showing that they are likely to succeed on the merits with regards to this element of their equal protection claim. Because the Plaintiffs have failed to make a clear showing as to the threshold elements of their equal protection claim, the Court need not address the appropriate level of scrutiny that would apply in this case had the elements been satisfied.

## B. FIRST AMENDMENT CLAIM

The Plaintiffs also claim the Bikefest traffic plan violates the Plaintiffs' rights under the First Amendment. More precisely, the Plaintiffs claim that the traffic plan infringes on their rights of expressive association. To start, the Court notes that there is no "generalized right of 'social association.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Instead, the First Amendment protects only two types of association: intimate association and expressive association. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 616-20 (1984). As the Supreme Court explained in *Roberts*, intimate association consists of the choice to "enter into and maintain certain intimate human relationships . . . ." *Id.* at 617. The Court has defined expressive association as the "right to associate for the purpose of engaging in those activities protected by the First Amendment –

speech, assembly, petition for redress of grievances, and the exercise of religion." *Id*. at 618. Indeed, the Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in the pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id*. at 622.

The "constitutionally protected right to associate depends upon the existence of an activity that itself is protected by the First Amendment." *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 261 (4th Cir. 2005). The Supreme Court has long recognized that the protections of the First Amendment do not end at the spoken word. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Indeed, the Court has acknowledged that "conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments[.]'" *Id. at* 404 (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)). Conduct is communicative, and therefore protected by the First Amendment when it is intended to "convey a particularized message" and there is a great likelihood that "the message [will] be understood by those who viewed it." *Id.*

In their motion, the Plaintiffs allege that the Bikefest traffic plan infringes on their rights of expressive association. The Plaintiffs claim that Bikefest is an opportunity for attendees to "gather for a celebration of identity, unity, and love of ridership." (ECF 6-3.) A major part of Bikefest involves "cruising" down Ocean Boulevard – that is, riding slowly down the street while showing off unique, customized bike designs and riding ability to spectators and fellow riders. (ECF 6-3, 6-7, and 6-8.) "Cruising" also involves stopping along Ocean Boulevard to talk to other participants and admire other bikes. (ECF 6-8.) Based on the record before it, the Court finds that as with their equal protection claim, the Plaintiffs have not made a clear showing that they are likely to succeed on the merits with regards to the First Amendment claim to expressive association.

First, at this early stage of the case, the Court does not have sufficient facts to discern a particularized message that Bikefest participants seek to convey. The Plaintiffs claim that "cruising" constitutes expressive conduct. However, the Court finds that the Plaintiffs have failed to make a clear factual showing that cruising is meant to "convey a particularized message" and there is a great likelihood that "the message [will] be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989); *See also Shanks v. Forsyth County Park Authority, Inc.*, 869 F. Supp. 1231 (M.D.N.C. 1994) (holding that riding a motorcycle in a public park did not constitute protected speech because it did not communicate any particular message).

Second, there is insufficient evidence in the record for the Court to determine that Bikefest participants are part of any organized association. *See City of Dallas v. Stanglin*, 490 U.S. 19, 23 (1989) (denying a claim of associational expression where patrons at a dance hall were not part of any organized association, where most patrons were strangers to one another, where the dance hall was open to anyone willing to pay admission, and where patrons did not take positions on public questions or engage in other protected activities). Based on the current record, Bikefest appears to be an unsanctioned gathering of individuals that occurs every year in the Myrtle Beach area. *See* (ECF 24-2, para. 11) (stating that Bikefest is not a permitted special event because no one in the private sector or public sector sponsors any events associated with Bikefest).

The Plaintiffs cite *Hurley v. Irish-Am. Gay Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557 (1995) and *Latino Officers Ass'n, New York, Inc. v. City of New York,* 196 F.3d 458 (2d Cir. 1999) to support their claim of expressive association. But there is insufficient evidence before the Court at this time for the Court to determine that this case involves an organized association seeking to participate in an officially sanctioned parade as was the case in those two decisions. Indeed, the Myrtle Beach area, and Ocean Boulevard specifically, are open to the public on Memorial Day Weekend regardless of whether they are participants in Bikefest. Moreover, there

is no evidence that there are any officially sanctioned Bikefest events within the City. R. at 91, 133. For these reasons, the Plaintiffs have failed to make a clear showing as to likelihood of success on the merits on their First Amendment claim at this point in time.

## II. IRREPARABLE HARM

The Court next turns to the question of irreparable harm. A party seeking a preliminary injunction must make a clear showing that he is likely to suffer irreparable harm. *Winter,* 555 U.S. at 20. It is well settled that a party who has suffered deprivations of their constitutional rights in fact suffers irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."). However, as set forth above, the Court, at this point in the proceedings, has found that the Plaintiffs have not made a clear showing that they are likely to succeed on their constitutional claims, at least for purposes of a motion for a preliminary injunction.

To be sure, the Plaintiffs also allege harm beyond the deprivation of constitutional rights including inconvenience, exhaustion, and frustration resulting from the traffic plan. However, these are not the kinds of harm that warrant a preliminary injunction. A preliminary injunction is not normally available where the harm at issue can be remedied by money damages. *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011).

Beyond that, the Bikefest traffic plan is the same or very similar to the plan that has been utilized in 2015, 2016 and 2017. Typically, injunctions are sought and granted on an emergency basis to prevent a change in the status quo and to preserve the court's ability to render a meaningful judgement on the merits. *Pashby*, 709 F.3d at 319. Here, the Plaintiffs brought a lawsuit and filed a request for an injunction in February 2018, to change a traffic plan that has been used since 2015. The Court finds this delay cuts against the Plaintiffs' claim of irreparable harm. *See De La Fuente v. South Carolina Democratic Party*, 164 F.Supp.3d 794, 804 (D.S.C. 2016). For all of these

reasons, the Court finds that the Plaintiffs have failed to make a clear showing that they are likely to suffer irreparable harm.

## III. BALANCE OF EQUITIES

In order to receive preliminary injunctive relief, a plaintiff must also show that the balance of equities tips in his favor. *Winter,* 555 U.S. at 20. "In each case, courts must balance the competing claims of injury and must consider the effect of the granting or withholding of the requested relief." *Id.* at 24 (internal citations omitted). In balancing the equities, the Court considers, among other things, the time frame in which this action was brought and the prejudice that will result to the Defendants if the traffic plan is enjoined only a few days before Memorial Day Weekend. *See generally Perry v. Judd*, 471 Fed. Appx. 219, 224 (4th Cir. 2012)(unpublished decision); *De La Fuente v. South Carolina Democratic Party*, 164 F.Supp.3d 794, 804 (D.S.C. 2016). Here, the Court finds that the balance of the equities tips in favor of the Defendants.

The current traffic plan has been in place for the past three Memorial Day Weekends without the Plaintiffs filing suit or seeking injunctive relief until February 2018. *See* R. at 15, 23, 136. The Plaintiffs could have brought suit to enjoin the Defendants' traffic plan at any time over the past three years, but they did not do so. Instead, the Plaintiffs filed suit three months before Memorial Day Weekend 2018. The Court finds that this delay weighs against the Plaintiffs' request for the extraordinary remedy of a preliminary injunction.

Second, the Court finds that the Defendants will be prejudiced by the issuance of a preliminary injunction in this case. The Court notes again that Bikefest activities are not permitted special events sponsored by anyone in the private sector or the City of Myrtle Beach. (ECF 24-2.) As Chief Prock states in her affidavit, "[n]o one can predict in advance of the weekend exactly who will come to the City or what will happen during Memorial Day Weekend 2018." (ECF 24-2, para. 11.) The City began planning for Memorial Day Weekend back in August of 2017, and

the event is now less than a week away. R. at 118. The Court finds that based on the Defendants' exhibits, the testimony of Myrtle Beach Police Chief Amy Prock and the testimony of Captain Joey Crosby that traffic gridlock, disorderly crowds, and violence has occurred over past Memorial Day Weekends in the area of Ocean Boulevard governed by the traffic plan that the Plaintiffs seek to enjoin. The Court further finds that if the traffic plan is enjoined only a few days before Memorial Day that the Defendants will be prejudiced in their ability to provide for the public safety during Memorial Day Weekend and that there is a risk of the same or similar harm this year as there was during prior Memorial Day Weekends when no traffic plan was in place.

While the Court appreciates the significance of the harm and injuries the Plaintiffs have alleged in their motion, the Court finds that the Defendants have shown the potential for harm to others if its traffic plan is enjoined, especially this close to Memorial Day Weekend. Based on the Plaintiffs' delay in filing the current action and the prejudice an injunction would cause to the Defendants, the Court finds that the balance of the equities tips in favor of the Defendants.

## IV. PUBLIC INTEREST

The Plaintiff must also show that the injunction is in the public interest in order to be granted preliminary injunctive relief. *Winter,* 555 U.S. at 20. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (internal citations omitted). For similar reasons stated in Part III, *supra*, the Court finds that the public interest is more likely served if the Plaintiffs' motion for injunctive relief is denied.

This case is similar to the case of *Justice Res. Ctr. v. Louisville-Jefferson Cty. Metro. Gov't*, 2007 WL 1302708 (W.D. Ky. 2007). In that case, the plaintiffs requested a preliminary injunction of a traffic plan in place for the 2007 Kentucky Derby Festival which called for the closure of Broadway from 9th Street West to 34th Street, a section of the road that runs through a

predominantly African-American area of the city. *Id.* at *1. The plaintiffs alleged that the road closure would cause profit loss and irreparably harm African-American owned businesses located along the stretch of road subject to closure under the traffic plan. *Id*. The plaintiffs also alleged that the road closure constituted racial discrimination and disparate treatment in violation of their rights under the 14th Amendment. *Id.* The defendants in that case claimed that the traffic plan was developed in reaction to cruising, the act of driving up and down the boulevard to be seen. *Id*. They further claimed that Derby Day cruising developed into excessive gridlock, large crowds, and deadly violence. *Id*.

In considering whether to grant the plaintiffs request for preliminary injunction in *Justice Resource Center*, the Court assumed that the plaintiffs met their burden of showing a likelihood of success on the merits and a likelihood of irreparable harm. *Id.* at *6. Even with that assumption, the Court found that the balance of the equities tipped in favor of the Defendants and that the public interest favored denial of the injunction. *Id*. The Court based this decision primarily on the risk of harm to the public if the traffic plan were enjoined where there was evidence of unacceptable level of criminal behavior in the absence of a traffic plan during past Derby weekends including a homicide, shootings, and sex offenses. *Id*.

Here, as in *Justice Resource Center*, the Court believes it is in the public interest to deny the preliminary injunction requested by the Plaintiffs. Although the Plaintiffs have raised issues about the effectiveness of the Bikefest traffic plan, the affidavits provided by the Defendants and testimony of Chief Prock and Captain Crosby indicate that the traffic plan in place for Memorial Day Weekend attempts to serve a legitimate public interest in decreasing traffic congestion on Ocean Boulevard, providing a clear path for emergency response vehicles and providing for the public safety in general. When considering the alleged injuries to the Plaintiffs with the demonstrated public interest in preventing problems with traffic gridlock, disorderly crowds and

violence that might occur on Ocean Boulevard and surrounding areas if the City's plan is enjoined, the Court finds that the public interest will be best served if the City is allowed to proceed with its traffic plan for Memorial Day Weekend 2018. Of course, this order does not prevent the Plaintiffs from continuing with the prosecution of this case. It merely means the Court does not believe the extraordinary remedy of a preliminary injunction is appropriate based on the current record.

## CONCLUSION

Accordingly, for the reasons stated above, the Plaintiffs' Motion for a Preliminary Injunction is hereby DENIED.

IT IS SO ORDERED.

_____
A. Marvin Quattlebaum, Jr.
United States District Judge