UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF MYRTLE BEACH, *et al.*, <br><br> Defendants. | Civil Action No. 4:18-cv-00554-SAL |

**PLAINTIFFS' BRIEF ON NAACP'S STANDING**

**I.     Introduction**

Pursuant to the Court's Order (ECF 204), Plaintiffs hereby submit this brief regarding the organizational standing of Plaintiff National Association for the Advancement of Colored People, Inc. ("NAACP"). As an initial matter, we note that the NAACP is a plaintiff in this case based on organizational as well as associational standing. Defendant has not raised any objection to the NAACP's associational standing to pursue its claims; nonetheless we address the NAACP's basis for associational standing at the end of this brief. Further, the Court has Article III jurisdiction to hear this case regardless of the NAACP's standing because the individual Plaintiffs' standing has been established and is not challenged.

On the question of the NAACP's organizational standing, the Supreme Court has set forth the relevant standard in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). The *Havens* standard is readily met here and the NAACP's representative witness will clearly establish that the NAACP, as an organization, has suffered an injury in fact sufficient to support its organizational standing. The Fourth Circuit's decision in *CASA de Maryland, Inc. v. Trump*, 971

1

F.3d 220, 237 (4th Cir. 2020) does not alter the analysis. *CASA* indicates that a voluntary decision to expend resources to identify and counteract a defendant's wrongful act is insufficient to confer standing, but the NAACP makes no such allegation here. The NAACP's responsibilities to its members compel it to respond to the complaints and requests for services from its members in relation to the discriminatory actions of Defendant City of Myrtle Beach (the "City") during Black Bike Week. The resources necessary to respond to its members during Black Bike Week prevent the organization from engaging in its typical activities during large African-American events such as membership and voter registration drives. In addition, the City's treatment of Black Bike Week prevents the NAACP from engaging in its normal advocacy and counseling activities on behalf of its members.

The NAACP, therefore, meets the organizational standing requirements in this case, and would remain a plaintiff regardless under the associational standing doctrine.

**II.     Standing Analysis in the Case of Multiple Plaintiffs**

As an initial matter, Plaintiffs note that the Court need not conduct an Article III standing analysis at this stage because, not only is there no challenge to the NAACP's associational standing, but there is also no dispute regarding the eight individual Plaintiffs' standing in this matter. The Supreme Court has concluded that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *see also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999) (holding that a case is justiciable if some, but not necessarily all, of the plaintiffs have standing as to a particular defendant); *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 263–64 (1977) (same).

**III.     Standard for Establishing Organizational Standing**

As a general matter, a plaintiff meets the Article III standing requirements if the plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See, e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The issue raised here regarding the NAACP's basis for organizational standing only implicates the first of these three familiar Article III standing requirements: injury in fact.

The Supreme Court set forth the specific requirements for an organizational plaintiff to demonstrate injury under Article III in *Havens*, 455 U.S. 363. The organization in *Havens* brought a civil rights claim alleging that an apartment complex owner was engaging in illegal racial steering practices. *Id.* at 368. The organization alleged that the steering frustrated the organization's "efforts to assist equal access to housing through counseling and other referral services" and that, in response, it had to "devote significant resources to identify and counteract" Defendant's discriminatory practices. *Id.* at 379. The Court held that the allegation of the "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources" was sufficient to establish standing. *Id.* Importantly, an organization may have standing under *Havens* even if "the alleged injury results from the organization's noneconomic interest in encouraging open housing." *Id.* at 379 n.20 (citing *Arlington Heights,* 429 U.S. 252). In sum, the Supreme Court found that the organization in *Havens* had standing because it could establish that the Defendant's actions "perceptibly impaired" its ability to provide its typical services. *Id.*

Numerous circuit courts following *Havens* have interpreted it, in shorthand, as allowing organizational standing where the organization can show a diversion of resources and frustration

3

of mission. For example, in *Cent. Alabama Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 642 (11th Cir. 2000) the Eleventh Circuit found standing where "an organization incurr[ed] diversion of resources and frustration of purpose damages as a result of specific documented incidents of unlawful discrimination toward its testers." Replace the word "testers" with "members" and the *Lowder Realty* case precisely describes the evidence in this case.

The case Defendant relies on here acknowledges that *Havens* is controlling and restates that an organization "'may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission.'" *CASA*, 924 F.3d at 237 (internal citations omitted).

In *CASA*, the Fourth Circuit provided guidance on precisely when an organization has suffered an injury in fact because of a defendant's actions. *Id.* In order to establish standing, an organization must show that the defendant has impeded its efforts to carry out its mission. *Id.* The court explained that a voluntary budgetary decision, such as undertaking litigation in response to legislation, is insufficient to confer standing because it would allow organizations to manufacture standing. *Id.* at 238-39. *CASA* explains that an organization may not manufacture standing by choosing to make expenditures on issues abstractly related to its mission, but instead has standing when a defendant's conduct has forced the organization's hand. *Id.* at 238-240.

The *CASA* court follows a line of cases in the Fourth Circuit stemming from *Havens*, and holds that where an organization suffers operational harm—that is, the defendant's conduct interferes with, or prevents, the organization from carrying out its usual activities—the organization has established standing for the purposes of Article III. *Id.* at 239-240. *See also Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012). Thus, under *CASA*, a defendant's actions must impair the organization's ability to operate and function as it normally would. Contrary to the City's claims, that is exactly what the NAACP alleges has occurred here.

4

IV.     **Factual Basis for NAACP's Organizational Standing**

A central aspect of the NAACP's mission is providing counseling and assistance to its members. When a member pays dues to the NAACP, the organization agrees to provide support to that individual as they navigate the public spheres of life. One of the core activities of the NAACP is serving as a resource to members when they experience race-based discrimination and to assist those members in addressing and resolving the issue. The actions of the City have stymied the NAACP's ability to function in this sphere in multiple ways.

1. **Interference with NAACP Typical Activities of Engaging in Membership and Voter Registration Drives and Other Activities**

The NAACP's representative will testify that the City's actions during Black Bike Week interfere with the NAACP's ability to engage in a number of its primary and typical activities, and in particular its usual membership registration and voter registration drives. All levels of the NAACP, from the local branches and chapters to the national office, regularly engage in membership drives, particularly when there are events in an area with a significant African-American attendance. Similarly, the NAACP seeks to register voters during large gatherings where the NAACP has a presence. Voter registration is a central part of its Civic Engagement Program.

As the NAACP representative will testify in this case, the City's actions have led to an extraordinary volume of NAACP member contacts through complaints, requests for counseling, requests for advocacy, and requests for referrals. The NAACP does not have a choice as to whether it can decline to respond to these requests for action. The NAACP commits to serving as an advocate, counselor, and resource to its paying members when they are facing issues of discrimination. The record is replete with, and the NAACP's testifying witness will expand upon, evidence that member requests for services in relation to the City's treatment of Black

5

Bike Week has overwhelmed the NAACP infrastructure that can be mobilized in Myrtle Beach. As a result, the NAACP cannot engage in the membership and voter registration drives it would otherwise do during this unique opportunity to reach potential new members and potential new voters who are largely African American and gathering in one relatively small geographic area.

In addition, the NAACP Myrtle Beach Branch (the "Branch") previously sponsored youth events such as a softball tournament and education programs during Black Bike Week, but the efforts necessary to respond to member complaints and requests related to the City's treatment of Black Bike Week prevented the Branch from putting on the events. The Branch has also been unable to focus on and respond to education, employment, housing, and economic issues and complaints that arise from members during Black Bike Week.

The City's treatment of Black Bikers is directly causing the complaints and requests to the NAACP, and the NAACP is required, as part of its promised services to its members, to respond. As a result, it is forced to divert resources from activities like member and voter registration and other activities that it would otherwise pursue during Black Bike Week. This is not a voluntary choice to address the City's action instead of engaging in membership and voter drives and youth-related events. As a result, the City's actions are directly impairing the organization's ability to engage in activities that are central to its mission.

### 2. Interference with NAACP's Counseling and Assistance to Its Members

The NAACP has also been directly impeded from carrying out its mission to advocate for its members by the City's actions. Since the end of 2014, the City of Myrtle Beach has: denied the NAACP a seat at the table as it made wide-sweeping decisions about an operations plan that would negatively affect NAACP members; unceremoniously rebuffed the NAACP when it tried to engage with the City on alternate measures to put in place during Black Bike Week; and

steadfastly insisted on instituting an onerous and discriminatory traffic plan year after year. As a direct result of the City's actions, the NAACP has been unable to assist its members in addressing and resolving the discrimination they face when attending Black Bike Week, thereby interfering with the NAACP's usual activities and impairing its ability to function.

* * *

Consistent with *Havens*, *Lane* and *CASA*, the NAACP has suffered an injury in fact as a result of the City's actions and therefore has standing to seek damages for this injury.

## V.     NAACP's Associational Standing is Not at Issue

The NAACP has pursued standing in this matter under both the organizational and the associational standing doctrine since the inception of this case. *See* ECF 84, First Amended Complaint at ¶¶ 183-187.

To demonstrate associational standing, an organization "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id*. An organizational plaintiff must satisfy the first two elements for associational standing laid out in *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977): "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose." *See United Food and Commercial Workers Union Local 751 v. Brown Group, Inc*., 517 U.S. 544, 554-556 (1996) (finding an organizational plaintiff need only satisfy the first two prongs of the *Hunt* test because "it is difficult to see a constitutional necessity for anything more."). Thus, an organization may establish standing to sue on behalf of its members as long as the members would have standing to sue on their own behalf and the litigation is germane to the group's purpose. *Id.*

Here, the NAACP satisfies both elements. The NAACP is a membership organization that seeks to "to ensure the elimination of all racial barriers that deprive African-American citizens of the privileges of equal civil and constitutional rights in the United States." Pls. Trial Ex. 62 (noting the NAACP's mission). Members of the NAACP, including Plaintiff Novice Briggs, have individual standing to sue Defendant for constitutional harms in their own right—a fact Defendant does not deny. Through this litigation, the NAACP seeks to protect its interests in defending African-American and other minority residents and visitors in the Myrtle Beach area from racial discrimination. Pls. Ex. 62. Protecting minorities, including its members, from racial discrimination in the Myrtle Beach area is germane to the purpose of the NAACP as it works to eliminate all forms of racial discrimination throughout the United States.

Further, the NAACP also satisfies the third element of the *Hunt* test because the claims and relief requested by the organization do not require the participation of NAACP members. There are no aspects of the factual issues being tried that necessitate individualized proof that only members could present. The NAACP is not seeking damages for its members through its associational standing-based claim, and claims for declaratory and injunctive relief typically, as here, inure to the benefit of injured members of an organization. Thus, individualized proof of damages is not necessary to establish the claims. *Warth v. Seldin*, 422 U.S. at 515. Thus, Plaintiff NAACP easily meets the standard for associational standing and may proceed as a Plaintiff with or without organizational standing.

## CONCLUSION

For the above-stated reasons, the Court should permit the NAACP to continue to pursue its claims under both the organizational and associational standing doctrines.

Dated: December 1, 2020

Respectfully submitted,

/s/ Peter Wilborn
D. Peters Wilborn, Jr. (ID #7609)
Law Office of Peter Wilborn
57 Cannon Street
Charleston, SC 29403
(843) 416-9060
peter@bikelaw.com

Reed N. Colfax (admitted *pro hac vice*)
Tara K. Ramchandani (admitted *pro hac vice*)
Kali Schellenberg (admitted *pro hac vice*)
Angela A. Groves (admitted *pro hac vice*)
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
rcolfax@relmanlaw.com
tramchandani@relmanlaw.com
kschellenberg@relmanlaw.com
agroves@relmanlaw.com

Dorian L. Spence (admitted *pro hac vice*)
Maryum J. Jordan (admitted *pro hac vice*)
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC, 20005
(202) 662-8600
dspence@lawyerscommittee.org
mjordan@lawyerscommittee.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December 2020, a true and correct copy of the foregoing was filed via CM-ECF and served on all attorneys of record.

/s/ Peter Wilborn
D. Peters Wilborn