IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| National Association for the Advancement of Colored People, Inc. by and through its Myrtle Beach Branch, *et al.*,<br><br>                Plaintiffs,<br><br>v.<br><br>City of Myrtle Beach, a municipal corporation within the State of South Carolina and City of Myrtle Beach Police Department, a department of the City of Myrtle Beach,<br><br>                Defendants. | C.A. NO. 4:18-CV-00554-SAL<br><br><br>**DEFENDANTS' BRIEF REGARDING PLAINTIFF NAACP'S STANDING TO PURSUE ITS CLAIMS** |

      No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. *Raines v. Byrd,* 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 37 (1976)). As such, before litigants can avail themselves of the judicial power, they must satisfy the familiar three-part test for standing. A "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* ___ U.S. ___, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). An organization like the NAACP "may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission." *Lane v. Holder,* 703 F.3d 668, 674 (4th Cir. 2012) (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)); *see also Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

    **I.**       **The NAACP's Individual Standing Claims**

In its Amended Complaint, the NAACP alleged its investigation and monitoring of the City of Myrtle Beach during Black Bike Week "forced the NAACP and its Myrtle Beach branch to divert their resources from other activities and efforts they would otherwise have pursued in furtherance of their missions. [The City's] actions have frustrated the mission, purpose and interests of the NAACP and its Myrtle Beach branch and their members." (ECF No. 84, para.187).

Due to this frustration of purpose, the NAACP alleged it is entitled to compensatory damages "in an amount that would fully compensate them for the diversion of resources and frustration of mission." *Id.* at para. 216.

In *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220 (4th Cir. 2020), the Fourth Circuit explicitly excluded organizational standing based on claims of diversion of resources or frustration of mission without evidence the organizational plaintiff was *actually* injured. In other words, "standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy…and that a plaintiff's voluntary expenditure of resources to counteract governmental action that only indirectly affects the plaintiff does not support standing." *Id.* at 238-239 (internal citations omitted). Instead, the organization must show "injury in terms of its ability to *function*." *Id.* at 239 (distinguishing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)) (emphasis in original).

The NAACP has not presented any evidence that the City's public safety plan impaired its ability to function. In its 30(b)(6) deposition, the corporate representative, Anson Asaka, testified:

> Q. And what are your duties as an associate general counsel?
>
> A. …So in addition to the in-house matters I also deal with civil rights. That's a huge part of what I do. So just about every area of civil rights I'm involved in our cases in one way or another. So from cases such as this one involving police issues to, you know, criminal justice, voting rights, public accommodations, housing, education. A wide range of issues.

(Ex. 1, Asaka Depo., 4:3-16).

Mr. Asaka further testified the instant lawsuit came about due to the NAACP's investigation and monitoring of the City, which it had been doing for many years, and its determination that litigation was the best option "after all other efforts had been thoroughly exhausted." *Id.* at 5:12-6:12. Mr. Asaka prepared a memo to the NAACP's general counsel recommending litigation, and the general counsel approved it. In turn, the NAACP's president approved the recommendation, and the NAACP filed the instant lawsuit. *Id.* at 6:13-18.

The City never impaired the NAACP's ability to investigate the City's public safety plan or to file the instant lawsuit. Instead, City officials met with Mr. Asaka and discussed the NAACP's objections to the public safety plan. The Bikefest Taskforce, whose meetings were open to the public, discussed the NAACP's proposed traffic loop (Ex. 2, Gall Email), and the City responded to the NAACP's extensive Freedom of Information Act requests prior to its filing the instant lawsuit (Ex. 3, FOIA Request). In short, the City never impaired the NAACP's function – to contest actions it believed were discriminatory. *See* Amended Complaint, ECF No. 84, para. 13 ("[T]he purpose of the NAACP is to ensure the elimination of all racial barriers that deprive African-American citizens of the privileges of equal protection and constitutional rights in the United States.").

*CASE de Maryland* contained clear instruction to district courts that organizational plaintiffs must present evidence of "concrete injury" to obtain standing and cautioned an

organization cannot satisfy this requirement through: (1) stand alone philosophical objections to a law; (2) gripes with how the law is enforced against other persons; or (3) decisions to voluntarily spend money to combat the effects of a given policy. 917 F.3d at 240. To do otherwise would allow standing "for any entity with a policy position and a dollar." *Id.*

The NAACP's claims fall squarely within *CASA de Maryland*'s prohibition, and therefore, it should be denied organizational standing.

### II.     NAACP's Representational Standing

A plaintiff can establish representational standing to sue on its members' behalf when: (1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d175, 184 (4th Cir. 2013).

The NAACP should be denied representational standing because the claims and the relief sought require participation by individual members.

In the instant case, the NAACP alleged that all aspects of the City's public safety plan were discriminatory: (1) the emergency lane along Ocean Boulevard; (2) the traffic loop; (3) the pedestrian barriers; and (4) additional police officers. Claims for injury due to this large and complex plan require personal accounts and not just general grievances presented by one representative. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (When the asserted harm is "a

generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.).

In addition, the NAACP's members do not uniformly agree that the City's public safety plan is discriminatory. In her deposition, Violet Lucas, a former member of the Myrtle Beach NAACP and current member of the Georgetown NAACP testified:

> Q. Do you feel like the pedestrian barricades have impeded the ability of a pedestrian to sort of celebrate and appreciate the bikes and cars as they go by?
>
> A. Well, again, speaking as a biker, for me it becomes a little bit more of a safety hazard, because if I have to worry about a pedestrian running in front of me -- which has happened to me in the past where someone has ran out in front. So you have to slam brakes. And again, I'm on two wheels. So when I'm slamming I run the risk of dropping my motorcycle or me getting hurt because someone wanted to run across the street or wanted to run over to the car or something of that nature.

Lucas Depo. at p. 75-76

And:

> A. Well, sadly for us as bikers -- well, we can say that we went down in 2014. Oh, police presence is down in Myrtle Beach. Great. They finally don't have any police. Well, what ended up happening? We ended up having three fatalities because there wasn't that many police. So for me it becomes -- if we had the excessive amount of police presence that we had in the past, maybe those three individuals would still have been alive, you know.

*Id.* at p. 107.

Moreover, the City's law enforcement expert and NAACP member, Bob Stewart, who came to Black Bike in the City twice, concluded the City's safety plan was not discriminatory.

Regarding the National NAACP and its representation of the Myrtle Beach NAACP branch, Mickey James, the president of the Myrtle Beach NAACP, testified:

> Q. Now, did y'all have a meeting in which you discussed the lawsuit against the City of Myrtle Beach?
>
> A. Never.
>
> Q. Never. Did you know you were going to be named as a party to this lawsuit?
>
> A. Didn't realize that.
>
> Q. Okay. Who makes the decisions for when to bring a lawsuit, in the NAACP; if you know?...
>
> A. The national – the national association does that.

James Depo., p. 8-9.

Such a lack of communication and uniformity among its members requires individual examination of the plaintiffs instead of representational standing by the NAACP. Allegations that the City's public safety plan is discriminatory requires individual and personal accounts because experiences during Black Bike Week vary widely and opinions about the City's public safety are equally uneven.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss the NAACP from the above captioned lawsuit because it cannot show that it meets the requirements for Article III standing. The NAACP has not suffered an injury that would give it individual standing. The lawsuit requires the participation of individual members in the lawsuit and therefore the NAACP does not have representational standing.

*(Signature only on following page)*

                           By: s/*James R. Battle*
                           James R. Battle, Fed. ID # 10221   (jbattle@battlelawsc.com)
                           By: *s/Michael W. Battle*
                           Michael W. Battle, Fed. ID # 1243   (mbattle@battlelawsc.com)
                           ATTORNEYS FOR DEFENDANTS CITY OF MYRTLE BEACH
                           THE CITY OF MYRTLE BEACH POLICE DEPARTMENT
                           BATTLE LAW FIRM, LLC
                           1200 Main Street
                           Conway, SC 29528
December 1, 2020    (843) 248-4321 (tel)